Case No. 241925 Soil Friends, LLC, et al. v. Charter Township of Comstock, MI, et al. Argument not to exceed 15 minutes per side. Mr. Kustra, you may proceed. Thank you. Good morning, Your Honors. May it please the Court. My name is Stephen Kustra and I'm the attorney for plaintiff appellants Soil Friends, Ben Martin, and Sarah Martin. I request three minutes for rebuttal time. All right. The district court dismissed too much, too fast, with the wrong lens. This Rule 12 dismissal short-circuited well-pleaded constitutional claims and granted qualified immunity too early. At the Rule 12 stage, the district court misapplied qualified immunity by demanding more granularity than the Sixth Circuit requires, discounted well-pleaded Monell allegations, and treated municipality liability as if it had been pleaded by label rather than by fax, closed the case with prejudice without giving leave to amend despite plausible constitutional claims surrounding the First Amendment retaliation and procedural and substantive due process. You didn't move. Did you formally move to amend? No, Your Honor. And you didn't give the court a draft or a proposed amended complaint that would remedy what the court thought the defects were. Is that correct? No. Yes, Your Honor. The court dismissed it with prejudice. Well, okay. Okay. Point. I understand. Go ahead. That kind of goes really to the very point of our— Can I just follow up on Judge Ketla's question? You didn't submit a proposed amended complaint or a motion to amend your complaint. We weren't given the opportunity, Your Honor. The case was dismissed. The opinion order was issued and a judgment of dismissal with prejudice was issued concurrently with that, which precipitated this appeal. Now, we did have an opportunity. We did amend the complaint initially based on an agreement between the defense attorney and us to address some issues that they put forward at the onset. But it was never granted court sanction and it was never with the court's guidance. It was prior to any response of pleading that was filed. So, what the First Amendment complaint alleges is specific township officials, through condemnation, through delays, through other manipulation of the process, to cause costly ad hoc conditions and created a situation where they were infringing on my client's rights to run their business, to get their approvals and things. What that was precipitated by, generally, was a campaign that my clients were running, which was to complain mostly on Facebook but to others about the way the township was run. At some point throughout this process, the township supervisor, who held a large, significant clout there, went right up to him and said, you know, if you remove these from Facebook, maybe your process will get, maybe the road will be clearer for you, basically. And that's not the specific thing he said. But with that understanding that that's what it would take is that you shouldn't complain about your public officials. Can you tell us what claims you're bringing that remain on appeal? As I understand, in the district court, you said that you were not pursuing the Monell claim. And I know you're appealing the disposition with regard to qualified immunity. What else is at issue here on appeal? So, Your Honor, and there is a, it wasn't in our appeal, but there was an inarticulate argument that was made with respect to the Monell when it was dealing with the particularization toward some of the defendants and to overcome one of the precedents there. That was inarticulate, but... Well, I mean, you said, our allegations do not seek recourse nor imply a policy practice or custom, the township. And our omission of a Monell claim shows we're suing the township defendants individually. So, how is that not an abandonment of your Monell claim? I understand, and I believe it was in reference to the First Amendment retaliation claim, not necessarily the rest of the unconstitutional conditions and the balance of the complaint. That was focusing on the count one First Amendment retaliation. That's why it was inarticulate, because it didn't correctly specify that it was, or clearly specify that it was just for that, dealing with that one. But if you look at the responses in total, the motion to dismiss was attacking that specific, those specific allegations against the defendants at the time. So, you're saying you have abandoned your Monell claim with respect to the First Amendment retaliation claim, but you've preserved it with respect to the due process and takings claim? That's our argument. And did you make that argument in your brief in this court? Like, did you differentiate? I don't remember a differentiation in your... I believe we did. I believe that when that issue was attacked, and we set forth in our reply that it's been a well-pleaded Monell claim. And we put it also in our brief as well, that it was a well-pleaded Monell claim as to the others. Okay, we'll look at that. I mean, you're trying to assert a takings claim against individual defendants. Is that correct? We're asserting a First Amendment retaliation claim against the individual defendants. Do you have a takings claim that you're pursuing here on appeal? We do, as to... And that's where we said, with respect to the Monell claims, that it is with the Comstock Township and the Township itself. All right, so you're not asserting that against any... Because I've never seen anybody try to do a takings claim against individual defendants. I thought that's what you're doing, but you're telling us you're not doing that. No. Okay. Do you have a final decision from the Township to be a predecessor to your takings claim? So a takings claim requires a final action. And as I understand it, you got conditional use approval and things are still pending. So do you have a final denial of your permits? To be honest, at this point, through the mediation process at the Sixth Circuit, we were able to mediate much of that. And there actually, at this point, is a finality to that. Wait, so you've mediated this claim? We haven't mediated the entirety of it, no. So can you tell us what remains? This is the first we've heard of this. So through mediation, we have mediated the effects of the issues. We have not mediated the damage that caused prior to. So we were able to work through with the Township at that... Throughout the Sixth Circuit mediation to achieve the end goal, which is get the building up and running, get the business up and running. The... So your business is up and running? Yes. Using the Red Barn, holding your winery or cider, all of that. You've got all of that going? Yes, Your Honor. The where... So your injunctive, your claims for injunctive relief are moot? They are moot now, at this point. Okay, that's good to know. So what remains? So what remains is the damage that occurred prior to. And so our clients that were subject to years of this retaliation and years of this process of delay and against their due process to the point where they have significantly been damaged. Well, I mean, if we can talk in concrete, specific terms, that might be helpful. Are you talking about not being able to use the barn? Or what are we talking about? They weren't able to run their business. They weren't able to use the barn. The cider business? The cider business, which was specifically in that... That was the manufacturing facility. Okay, so they couldn't run the cider business. That is correct. Well, they could, but they couldn't do it in the barn. Well, that was the facility to run it. Well, their initial license, I thought, allowed them to run it out of some kind of storage container. Correct. And then their license allowed them to manufacture it also there. Their license allowed them to expand their business into the manufacturing facility. So you're seeking damages for the inability to use the barn, but you built the barn without a permit. Is that right? Well, they built the barn with preliminary, but they weren't able to get a final permit. That is correct. So the answer is yes. They built the barn without any permit? The answer is yes. I thought the township claimed they had not applied. They had not even applied for the permit in a timely way. Well, when... Is that right or not? At the point that they moved the... So it's a farm. So under the Michigan Right to Farm Act, you're not necessarily required to get building permits to build a structure as long as it's adjunct to agricultural use. Once the building was being converted to the use for the winery, so that the idea of needing to get a building permit to build it wasn't necessary at the time it was erected. Okay. Yeah. It became... But it was never used primarily only for farm-related matters. It always was intended to be a commercial facility for guests who were interested in wine and things like that, food and all of that, wasn't it? Well, the idea being that it would have been a farm market and would have worked within the right to farm. But as the manufacturing facility wanted to expand, there was then a need to then go through the permitting process, which was started and then stalled based upon the conduct of the township officials. So can you just state very concretely for me, you're seeking damages for what? For the loss of business, for the loss of opportunity, for the infringement on their constitutional rights. But basically rooted in this period of time where there was a point in time before this litigation that we did not think that this was ever going to be completed. And so luckily through the mediation here at the Sixth Circuit, things actually started to move the ball forward. But it wasn't but for this litigation that required action from the township. And so... Well, but you got the conditional use permit, right? They held a hearing. So you entered into a stipulated order that said, you know, we're in violation, but the township will apply for the required permits. Township has to move with all deliberate speed. They held a hearing. You appeared at the hearing. They granted your permit conditional on your getting like the driveway and the sewer worked out. So what's the damage from? It took too long? Well, not only did it take too long, but it was a constant moving of the goalposts. So first it was just you need to have this inspection. Then it was the general trade inspections. Then all of a sudden it was, well, we want to have less than 99 people in the building. Well, we still want to send you for this inspection. You need the fire code. You need to do the things. Those things weren't required under the law. They created additional conditions on my clients in order to continue to proceed. And that is not proceed. There's no procedural fairness there. And it was based upon the animus that was created during this issue of saying that the supervisor was not doing his job. And so this was in the goalposts moving. This constant issue was because of the fact that Randy Thompson and the township itself worked together to delay things because of my client's speech and their request for due process. All right. Your real life's been on there for a while. Thank you. Thank you. Good morning. Morning. James McGovern. I represent all defendants that remain in the case. This appeal only involves two things. One is a Monell claim, which Judge Larson pointed out was waived by the plaintiffs during the briefing of the underlying motion to dismiss. And the district court judge specifically pointed that out in a footnote, not even in an order, but in the footnote, she stated that the Monell claim was waived. Specifically. So I don't know where that comes back into the Sixth Circuit, where this Monell claim in the briefing process is somehow rearing its head back in front of all of us. I think it's pretty clear that that was waived, not even ruled upon, but specifically identified by the district court judge as waived. Well, but the district judge could have been wrong about that. I mean, they're allowed to appeal that determination. That is true. And to that point, plaintiffs might have just been trying to preserve their Monell claim. But I think if you look at the brief itself from the plaintiffs, they specifically stated that they waived it. So it's appropriate for the judge to identify it that way. Yeah. And your friend on the other side says, well, this only goes to the retaliation claim. We waived it, but only as to the retaliation claim. We still have it with respect to, for example, our due process claim. I don't see where that was ever stated in the original briefing. And I don't know where that is identified clearly in the briefs before you. I think it's pretty clear that it's waived. The other thing we're here for, really, this case is all about qualified immunity. That's it. Judge Beckering only ruled on the qualified immunity. And I will point out, in the briefing that the plaintiffs wrote for you, they stated that their amended complaint. And Judge, I will clarify that there was an initial complaint. And they did amend the complaint. So they already got one amendment. They did. And in response to the motion to dismiss, numerous times I have seen parties say, can we do a second amended complaint? They never asked for that. So they're going full speed ahead with their amended complaint in the words and the claims that they used in that amended complaint. In your briefing, on pages 39 and 40, plaintiffs state that their amended complaint includes violations of clearly established rights under the first, fourth, 14th amendments. Interestingly, qualified immunity, as you very well know, the second prong is that clearly established language. Simply, in the most basic form, in qualified immunity 101, you have to have a case that says. So let's identify this specific point. Judge Beckering said, you didn't give me any cases that are on point. You had the right in the motion to dismiss response to give me a case. You didn't. Not one case. Not one. In the response, I'm sorry, in the appellant's brief and the reply, they had the opportunity to give you a case. A case. They didn't. Counts two, three, four, and five. Zero cases. And count one, which is the first amendment claim, they attempt to use one case, which is called Fritz. And I'm not going to tear apart Fritz. I'm just going to refer you to Judge Beckering's decision where she said, Fritz is the same defendant. But besides that, it is not the same thing, period. There are no cases. So if the plaintiff, in their own briefing, says and asserts that their amended complaint includes violations of clearly established rights, where's the case? It's not in the briefing. And plaintiff's counsel, appellant's counsel, had 12 minutes to say, hey, I never put it in the brief, but Johnson versus Thompson says this. Not one case. I mean, we get it. And that's. They didn't cite any cases, except for Fritz. And therefore, qualified immunity applies. And this should be just affirmed. It should be a very simple process. That's our position. Thank you. Thank you. Any rebuttal? It's tough to overcome qualified immunity without cases. Well, I understand that, Your Honor. The issue is that if the right is so basic, there's not necessarily going to be cases. The cases that were cited here. That's not the law. Yeah. I mean, you're talking about the obvious case. But the examples that the Supreme Court has given us of what constitutes the obvious case are pretty extreme. They're like you tie a prisoner to a hitching post in the blazing Arizona sun. That's not this. What has to be obvious is that the official's conduct, OK, in these circumstances would violate federal law. It's not just that you have a right against, say, unreasonable searches and seizures, just for example. It's that what the officer is about to do, it should be obvious to the officer that his conduct, this action he's about to take, would violate somebody's constitutional rights. That's why you need a case that is factually similar. It doesn't seem like you have one. No, but we rely on the idea that at this point, with respect to the bedrock principle of First Amendment freedom of speech, and as set forth in McElney v. Williams, which is a Sixth Circuit case, where they say that almost all speech is protected from government interference. I mean, in this circumstance, I mean, they're interfering. There's a lot of room in that almost, though, you know, I mean. Well, and I do appreciate that, and I do understand. But what I would like to point out is, as during the argument from Brother Counsel, we did ask for an amendment in our response. So that was not true. I've looked at it, made sure I looked at it again. We did ask for an amendment, and the court didn't grant one. So when we filed our response, we said— But you didn't file a motion under Rule 15. You just asked at the end of your brief. If you don't, you know, if this isn't sufficient, please allow us to amend the complaint.  And then when the court entered its opinion, order, and judgment, then this precipitated the appeal. Right. So from a procedural standpoint. So aside from that, I do believe also that, for its own point, I disagree with the courts. That is your best case. I'll grant you that. You know, I think that it is substantially similar to the facts of the case. The problem is, is that the court dismisses on a 12b-6, and it wasn't a summary judgment. And had we gone to summary judgment, then the facts would have been more articulated in the record. And we didn't. We just had the bare pleadings at this point. So had we been able to go through, had we been able to actually get the record straight, then we would have been able to apply that and defend it better on that case. Here, we're dealing with allegations that what are required at this stage is plausibility, not proof. And the court just deprived us our ability to make proofs by dismissing it at the 12b-6 level. I thank you for your time. Thank you. And the case should be submitted.